34 A.3d 498

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Aaron G. SELTZER.

Misc. Docket AG No. 55, Sept. Term, 2010.

Court of Appeals of Maryland.

Dec. 22, 2011.

96

Glenn M. Grossman, Bar Counsel (Gail D. Kessler, Assistant Bar Counsel, Attorney Grievance Commission of Maryland) for petitioner.

No Argument on Behalf of Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

BATTAGLIA, J.

Aaron G. Seltzer, Respondent, was admitted to the Bar of this Court on December 12, 2001.[1] On December 9, 2010, the Attorney Grievance Commission ("Petitioner" or "Bar Counsel"), acting pursuant to Maryland Rule 16–751(a),[2] filed a "Petition for Disciplinary or Remedial Action" against Seltzer, which incorporated two complaints, one by a real estate agent, Debbie Jenkins, and the other by June Carolyn Piper–Brandon, a partner of Seltzer's realty company, Advance Realty Anne Arundel Inc. With respect to Ms. Jenkins's complaint, Bar Counsel alleged that Respondent violated various Maryland Rules of Professional Conduct under Maryland Rule 16–813, including Rule 8.4(a), (b), (c), and (d) (Misconduct),[3] for

---

1. Seltzer was decertified from the practice of law on April 7, 2010, because he failed to pay his Client Protection Fund dues.

2. Rule 16-751(a) provides in relevant part:

 (a) **Commencement of disciplinary or remedial action.**
 (1) Upon approval or direction of Commission. Upon approval or direction of the [Attorney Grievance] Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

3. Rule 8.4 provides in relevant part:

 It is professional misconduct for a lawyer to:
 (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct ... or do so through the acts of another;
 (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
 (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

engaging in deceitful acts and misrepresentations in connection with Seltzer's attempted purchase of commercial real estate in Baltimore, Maryland, as well as Rule 8.1(b) (Bar Admission and Disciplinary Matters)[4] for failing to cooperate with Bar Counsel in the course of its investigation of the complaints, failing to appear for a Statement Under Oath[5] for which he was duly subpoenaed, and failing to provide Bar Counsel with documents requested by subpoena. Bar Counsel alleged with respect to Ms. Piper–Brandon's complaint that Seltzer again violated Rule 8.4(a), (b), (c) and (d) for converting funds in his realty company's operating account for his own use and misappropriating funds in his realty company's escrow account and Rule 8.1(b) for failing to respond to a

---

(d) engage in conduct that is prejudicial to the administration of justice;

**4.** Rule 8.1 states in pertinent part:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

\* \* \*

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

**5.** Rule 16–732 provides, in pertinent part:

(a) **Approval and issuance.** (1) The Chair of the Commission may authorize Bar Counsel to issue a subpoena to compel the attendance of witnesses and the production of designated documents or other tangible things at a time and place specified in the subpoena if the Chair finds that (A) the subpoena is necessary to and in furtherance of an investigation being conducted by Bar Counsel pursuant to Rule 16–731 or (B) the subpoena has been requested by a disciplinary authority of another jurisdiction pursuant to the law of that jurisdiction for use in a disciplinary or remedial proceeding in that jurisdiction to determine alleged professional misconduct or incapacity of a lawyer subject to the jurisdiction of that disciplinary authority.

(2) Upon approval, Bar Counsel may issue the subpoena.

\* \* \*

(g) **Recording of statements.** Everything said by the witness at the time and place specified in the subpoena shall be contemporaneously recorded stenographically or electronically, and the witness shall be placed under oath.

request for information by Bar Counsel. In an Order dated December 10, 2010, this Court referred the matter to Judge Paul M. Bowman of the Circuit Court for Kent County for hearing, pursuant to Rule 16–757.[6]

Seltzer was served, through the Client Protection Fund,[7] with the Petition for Disciplinary or Remedial Action, as well as the Court of Appeals's Order, Writ of Summons, Interrogatories, Request for Production of Documents, and Request for Admission of Facts and Genuineness of Documents. Seltzer

---

6. Rule 16–757 provides:
 (a) **Generally.** The hearing of a disciplinary or remedial action is governed by the rules of evidence and procedure applicable to a court trial in a civil action tried in a circuit court. Unless extended by the Court of Appeals, the hearing shall be completed within 120 days after service on the respondent of the order designating a judge. Before the conclusion of the hearing, the judge may permit any complainant to testify, subject to cross-examination, regarding the effect of the alleged misconduct. A respondent attorney may offer, or the judge may inquire regarding, evidence otherwise admissible of any remedial action undertaken relevant to the allegations. Bar Counsel may respond to any evidence of remedial action.
 (b) **Burdens of proof.** The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence.
 (c) **Findings and conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party.
 (d) **Transcript.** The petitioner shall cause a transcript of the hearing to be prepared and included in the record.
 (e) **Transmittal of record.** Unless a different time is ordered by the Court of Appeals, the clerk shall transmit the record to the Court of Appeals within 15 days after the statement of findings and conclusions is filed.

7. Prior attempts by Bar Counsel to serve Seltzer personally were unsuccessful. Pursuant to Rule 16–753, Bar Counsel properly served the Executive Director of the Client Protection Fund, who in turn served Seltzer at his last known address by certified mail and ordinary mail.

did not file an Answer or any other response. An Order of Default was subsequently entered about which notice was sent to Seltzer at his last known address. The order permitted Respondent 30 days within which to move to vacate the order; no motion to vacate was filed. The case proceeded on the Requests for Admissions of Facts and Documents, which were deemed admitted by Judge Bowman because Seltzer failed to respond.

Judge Bowman subsequently issued his Findings of Fact and Conclusions of Law memorandum; he addressed Ms. Jenkins's complaint and found that beginning in 2008, Seltzer was simultaneously a partner of four different companies, Village Green, Death Star, Advance Realty, and First Class. In 2008, Seltzer submitted a contract to purchase real property on behalf of a fifth company, Allied Baltimore Development Group, LLC, to Ms. Jenkins, an agent for the seller of several commercial properties in Baltimore. One of the contract provisions was that Allied's deposit would be held by Village Green. At no time, however, did Seltzer explain nor did Ms. Jenkins or her seller understand that Seltzer executed the contract on behalf of Allied or that he was affiliated with Village Green, or any of the other companies, Death Star, Advance Realty or First Class. Pursuant to the contract of sale, Seltzer was to provide Village Green with a check representing a deposit which was drawn on Death Star's bank account. The check was returned for insufficient funds. After Seltzer repeatedly assured Ms. Jenkins that he would pay the deposit but failed to do so, the sale did not go through.

In October/November 2008, Respondent was the managing member of Village Green Title, LLC, (hereinafter "Village Green") which was located at 1662 Village Green, Crofton, Maryland. During that same time period, Respondent was also the managing member of Death Star, LLC (hereinafter "Death Star") which was located at 5468 Wellington Drive, Trappe, Maryland 21673. The Trappe address for Death Star was Respondent's residence at that time. During that same time period, Respondent was a 49% partner in Advance Realty Anne Arundel Incorporated

(hereinafter "Advanced Realty") which was located at 5 Crain Highway, N., Glen Burnie, Maryland 21061. Respondent was also the managing member of First Class Real Estate, LLC, (hereinafter "First Class") which was located at 1662 Village Green, Crofton, Maryland, 21114, the same address as Village Green.

In October of 2008, Respondent submitted a contract on behalf of Allied Baltimore Development Group, LLC, (hereinafter "Allied"), to Biddison Lane, LLC (hereinafter "Seller") to purchase commercial real estate located at 4004, 4006, 4008, 4010 and 4012 Biddison Lane, in Baltimore, Maryland (hereinafter "Biddison Lane"). (Petitioner's Exhibit B1). Unbeknownst to the Seller, Respondent executed the contract of sale on behalf of Allied. The contract price for Biddison Lane was $1,540,000.00 and required Allied to provide an earnest money deposit of $15,000.00 to be held by Village Green. Both the Seller and the Seller's Agent, Debbie Jenkins, (hereinafter "Jenkins") were never advised that Respondent was the managing member of Village Green, Death Star or a partner in Advanced Realty.

On or about November 8, 2008, Respondent wrote check number 1076 in the amount of $15,000.00 payable to Village Green on the account of Death Star. (Petitioner's Exhibit B–2). That check represented the earnest money deposit for Biddison Lane pursuant to the contract of sale. Death Star's check number 1076, written in the amount of $15,000.00 was never negotiated. (Petitioner's Exhibit B–28). Further, Death Star did not have $15,000.00 in its account at the time Respondent wrote check number 1076. (Petitioner's Exhibit B–28). Respondent misled Jenkins into believing that he had deposited Death Star's check number 1076 into Village Green's escrow account. Although Jenkins attempted to get verification from the Respondent that the $15,000.00 earnest money deposit for Biddison Lane was negotiated and held in Village Green's escrow account, she could never obtain that verification from the Respondent. By e-mail dated November 10, 2008, Respondent advised Jenkins that he would provide her with the

$15,000.00 check the following day. (Petitioner's Exhibit B–3). Respondent did not provide Jenkins or the Seller with the $15,000.00 check pursuant to the contract of sale.

By letter dated December 12, 2008, Respondent executed an "Addendum/Amendment" to the contract of sale between Allied and the Seller. (Petitioner's Exhibit B–4). Respondent had still not provided Jenkins or Seller with proof that the good faith deposit owed pursuant to the original contract of sale was being held by Village Green. On or about March 18, 2009, Respondent submitted a second "Addendum/Amendment" to the Contract of Sale to Jenkins and the seller. Pursuant to the second "Addendum/Amendment," Respondent agreed to provide valid verifiable proof of financing or proof of cash to the Seller within 48 hours and to increase the deposit by an additional $50,000.00 for a total of $65,000.00 to be held by Village Green. (Petitioner's Exhibit B–5). Respondent further agreed to make the deposit non-refundable. Respondent never deposited any money into Village Green's escrow account pursuant to the second "Addendum/Amendment."

On April 15, 2009, Respondent executed a third "Addendum to Contract." Pursuant to the third "Addendum to Contract," Respondent agreed, on behalf of Allied to place an additional $25,000 in escrow for a total of $40,000.00 to be held by Village Green. (Petitioner's Exhibit B–6). Respondent never deposited any money on behalf of Allied into Village Green's escrow account for the good faith deposit of Biddison Lane. The sale of Biddison Lane never occurred between the Seller and Allied.

When the sale between Allied and Ms. Jenkins's client did not go through, Seltzer returned to Ms. Jenkins with what purported to be a new buyer, this time seeking to purchase the property, at a lower price, in the name of First Class company. Like before, Seltzer gave Ms. Jenkins a check as a deposit, drawn on the Death Star's account, which was returned for insufficient funds. Seltzer never explained his role as the managing member of First Class.

In June of 2009, Respondent presented a "Contract of Sale" dated June 18, (sic) 2008, to the Seller on behalf of First Class to purchase Biddison Lane for $1,200,000.00. (Petitioner's Exhibit B–7). Respondent executed that "Contract of Sale" on behalf of First Class in June of 2009. Pursuant to that "Contract of Sale," it was agreed that a non-refundable deposit of $50,000.00 would be held by the Seller. The address for First Class is the same address as Village Green. Respondent never advised the Seller or Jenkins that he was a managing member of First Class. Respondent gave Jenkins check number 2013, dated July 4, 2009, written on the account of Death Star in the amount of $50,000.00. (Petitioner's Exhibit B–8). That check was returned for insufficient funds. (Petitioner's Exhibit B–27). After that check was returned for insufficient funds, Respondent sent Jenkins a June 24, 2009 e-mail to mislead her into believing monies would be transferred into Death Star's account so that check number 2013 would clear the bank. (Petitioner's Exhibit B–11). There was never a $50,000.00 transfer or deposit into Death Star's account. (Petitioner's Exhibit B–27). The Seller was never able to negotiate Death Star's $50,000.00 check which was the non-refundable deposit for Biddison Lane because Respondent never had $50,000.00 in the Death Star account. (Petitioner's Exhibit B–22).

To induce Ms. Jenkins's client to sell the commercial properties, Seltzer provided three fraudulent documents, attesting to First Class's financial condition and ability to purchase the properties. These documents included: a letter from Oppenheimer and Company, Inc., ostensibly authored by an Oppenheimer employee, which later was found to be false; a bank statement from Chase Investment Services Group, discussing an alleged Seltzer Family Trust account that, in fact, did not exist at Chase; and an e-mail from Chase discussing this Trust, ostensibly written by a person later found not to be affiliated with Chase.

Respondent provided several fraudulent documents to Jenkins. Respondent provided Jenkins with a letter date

June 26, 2009, ostensibly from Oppenheimer and Company, Incorporated (hereinafter "Oppenheimer"). (Petitioner's Exhibit B–9). That letter is fraudulent because Marc C. Hotten, whose name appears as the author, was not an employee of Oppenheimer on June 26, 2009. Further, Respondent created that June 26, 2009, letter to induce the Seller to enter into the contract submitted by First Class because it stated that there was over $3,000,000.00 unencumbered funds on deposit with Oppenheimer. Respondent also provided Jenkins with a Chase Investment Services Group (hereinafter "Chase") statement which was fraudulent. (Petitioner's Exhibit B–10). Respondent provided the Chase statement to induce the Seller to enter into the June 26, 2009, contract because it stated that there was $292,414.66 in the "Seltzer Family Trust." That statement was fraudulent because Chase does not maintain account(s) titled "Seltzer Family Trust." That statement was given to the Seller and Jenkins to demonstrate that there were funds available to purchase Biddison Lane. By e-mail dated June 24, 2009, Respondent provided Jenkins with a fraudulent e-mail from his broker, Robert E. Miller, an alleged employee of Chase. (Petitioner's Exhibit B–11). That e-mail was fraudulent because Chase does not have an employee named Robert Miller and does not maintain any accounts titled "Seltzer Family Trust." (Petitioner's Exhibit B–12).

Once Ms. Jenkins's complaint was filed, Seltzer repeatedly evaded Bar Counsel's multiple requests for information, including failing to respond to four subpoenas for documents and to appear for a Statement Under Oath.

By letter dated January 20, 2010, the Office of Bar Counsel's Investigator, William M. Ramsey, requested documents from the Respondent concerning the attempted purchase of Biddison Lane. (Petitioners Exhibit B–13). Although the Respondent received the January 20, 2010, letter, he never provided the Office of Bar Counsel the documents requested. (Petitioner's Exhibit B–14). Mr. Ramsey mailed a second letter to the Respondent dated February 22, 2010. (Petitioner's Exhibit B–15). Although

the Respondent received Mr. Ramsey's February 22, 2010 letter, he did not respond to Mr. Ramsey nor did he schedule a meeting to be interviewed by Mr. Ramsey. (Petitioner's Exhibit B–14).

On March 30, 2010, Mr. Ramsey served four (4) Bar Counsel subpoenas on the Respondent. (Petitioner's Exhibits B17, 18, 19 and 20). Those subpoenas requested the Respondent to produce his documents on the Chase account titled "Seltzer Family Trust," the BB & T account number 515–39–07449, titled "Death Star, LLC," the BB & T account number 515–58–53176, titled "Death Star, LLC" and to appear for a Statement Under Oath and produce documents. The Respondent's Statement Under Oath was to be held on April 6, 2010 at the Office of Bar Counsel. At the Respondent's request, his Statement Under Oath schedule for April 6, 2010 was rescheduled to Thursday, April 22, 2010. (Petitioner's Exhibit B–21). Thereafter, the Respondent requested and the Office of Bar Counsel agreed to reschedule the Statement Under Oath to April 26, 2010. (Petitioner's Exhibit B–22). Respondent failed to appear for the April 26, 2010, Statement Under Oath and failed to produce any documents requested in the four (4) subpoenas. (Petitioner's Exhibit B–25).

On April 27, 2010, the Respondent sent an e-mail to the Office of Bar Counsel advising that he was in the hospital and inquiring whether the Office of Bar Counsel was still willing to take his Statement Under Oath. (Petitioner's Exhibit B–23). In response, the Office of Bar Counsel advised the Respondent, that if he was going to cooperate then he would have to immediately send the documents requested in the subpoenas. (Petitioner's Exhibit B–24). Although Respondent agreed to send the documents requested to the Office of Bar Counsel, he never did. (Petitioner's Exhibit B–24).

Judge Bowman concluded that Seltzer's failure to disclose his role as managing member of First Class during negotiations for the second contract, paired with the bad Death Star checks, fraudulent documents and his multiple failures to

respond to Bar Counsel's requests for information, established, by clear and convincing evidence, that Seltzer had engaged in a pattern of deceit that indeed violated Rules 8.4(a), (b), (c) and (d) and 8.1(b).

By his conduct, the Respondent violated all of the rules of professional conduct charged by Petitioner in the Petition for Disciplinary or Remedial Action. Respondent's misrepresentations and deceit perpetrated on the Seller and their agent, Jenkins, began in October of 2008 and continued through July of 2009. Respondent never disclosed to the Seller or Jenkins that he was the managing member of Village Green and Death Star and a partner in Advanced Realty. Respondent never made the good-faith deposit required pursuant to the first contract. Respondent never had $15,000.00 in his Death Star bank account to make the food-faith deposit. Thereafter, Respondent entered into three (3) "Addendums/Amendments" to contract of sale with the Seller and agreed to a non-refundable deposit, which he never provided.

Respondent never disclosed to the Seller or Jenkins that he was the managing member of Death Star, Village Green, First Class or a partner in Advanced Realty when he entered into the second contract to purchase Biddison Lane. Although Respondent provided a $50,000.00 check written on the account of Death Star to the Seller, that check was never negotiable because the Respondent never had $50,000.00 in the account. Further, the Respondent created three (3) fraudulent documents to induce the Seller to enter into the second contract of sale with First Class. The Respondent created the Oppenheimer letter, the Chase Statement and the e-mail purportedly from Chase to induce the Seller to enter into the contract with First Class. The Respondent's continuing course of deceit and misrepresentations for nine (9) months violated Rule 8.4(a), (b) and (c). Respondent's continuing course of deceit for nine (9) months was prejudicial to the administration of justice in violation of 8.4(d). Further, Respondent violated Rule 8.1 by his willful failure to be interviewed by Bar Counsel's investigator, Mr.

Ramsey and to produce any documents requested by Mr. Ramsey. The Respondent ignored Mr. Ramsey's letters of January 20, 2010 and February 22, 2010. Thereafter, the Respondent willfully ignored four (4) subpoenas duly served upon him. Not only did the Respondent fail to produce the documents requested in the four (4) subpoenas, he also failed to appear for a Statement Under Oath. The Respondent avoided the Office of Bar Counsel throughout the investigation and rescheduled his Statement Under Oath from April 6th to April 22nd and then to April 26, 2010. Thereafter, the Respondent failed to appear for the Statement Under Oath on April 26, 2010. Respondent sent an email to the Office of Bar Counsel the following day in an attempt to appear as if he was cooperating, however, never produced any documents or rescheduled his Statement Under Oath. The Respondent's willful refusal to be interviewed by Bar Counsel, produce documents to Bar Counsel and to comply with the four (4) subpoenas duly served upon him violates 8.1(b). Respondent's misrepresentations, deceit and fraudulent letters violated Rule 8.4(d), conduct prejudicial to the administration of justice.

With regard to the second complaint, that of Ms. Piper–Brandon, Judge Bowman found that Seltzer, Ms. Piper–Brandon's Advanced Realty Anne Arundel, Inc. co-owner, used his signatory authority to withdraw from Advanced Realty's operating account at least $2,300, to which he was not entitled, and to transfer, without authorization, $5,500 from Advanced Realty's escrow account.

Petitioner alleges that Respondent violated Maryland Rules of Professional Conduct 8.1(b) and 8.4(a), (b), (c), and (d), by converting funds to his own use without entitlement from Advanced Realty Anne Arundel Incorporated's (hereinafter "Advanced Realty") operating account, for misappropriating funds from Advanced Realty's escrow account and for failing to respond to request for information from the Office of Bar Counsel.

In February of 2010, June Caroline Piper–Brandon, (hereinafter "Piper–Brandon"), owned 51% of Advanced Re-

alty and the Respondent owned 41%. Both Piper–Brandon and Respondent had signatory authority on Advanced Realty's operating and escrow accounts. On February 18, 2010, Respondent withdrew $1,300.00 from Advanced Realty's operating account maintained at Suntrust Bank. (Petitioner's Exhibit B–35). Respondent did not have any entitlement to the $1,300.00 he withdrew from Advanced Realty's operating account on February 18, 2010. (Petitioner's Exhibit B–35). On February 19, 2010, Respondent withdrew $800.00 from Advanced Realty's operating account for his own use without entitlement. (Petitioner's Exhibit B–35). Thereafter, on February 23, 2010 and February 26, 2010, Respondent withdrew $1,000.00 on each date from Advanced Realty's operating account for his own use without entitlement. (Petitioner's Exhibit B–35). Respondent has never repaid the $2,300.00 he took without entitlement to Advanced Realty.

On February 23, 2010, Respondent transferred $4,000.00 from Advanced Realty's escrow account maintained at Suntrust Bank. (Petitioner's Exhibit B–33). Respondent had no entitlement to the $4,000.00 transferred from Advanced Realty's escrow account. Further, the $4,000.00 transferred from Advanced Realty's escrow account were funds belonging to Advanced Realty's clients.

On March 2, 2010, Respondent withdrew $1,500.00 from Advanced Realty's escrow account for his own use. Respondent had no entitlement to the $1,500.00 he withdrew on March 2, 2010. Further those funds belonged to Advanced Realty's clients.

In addition, Seltzer withdrew or transferred $9,156 from Advanced Realty's escrow account to two individuals who were not clients of Advanced Realty and not entitled to the money. Thereafter, Seltzer attempted, but failed, to make a subsequent corresponding deposit of $9,156 by writing a bad check from his Death Star account, in which he never had the requisite money.

On March 8, 2010, the Respondent wired $9,156.00 from Advanced Realty's escrow account to JP Morgan Chase,

made payable to Hymowitz and Freeman. (Petitioner's Exhibit B–33 and 37). Hymowitz and Freeman are not clients of Advanced Realty. There was no corresponding deposit into Advanced Realty's escrow account prior to the Respondent's write transfer of $9,156.00 on March 8, 2010. On March 9, 2010, Respondent deposited Death Star's check number 2125 in the amount of $9,156.00 into Advanced Realty's escrow account, however, that deposit was returned on March 12, 2010, due to insufficient funds in the Death Star account. (Petitioner's Exhibits 27 and 33). On March 15, 2010, Respondent deposited Death Star's check number 2133 in the amount of $7,000.00 into Advanced Realty's escrow account. However, that deposit was returned on March 18, 2010, due to insufficient funds in the Death Star account. (Petitioner's Exhibit B–27 and 33). Respondent never had the funds in Death Star's account to issue those two checks. (Petitioner's Exhibit B–27). The Respondent had no entitlement to the $9,156.00 that he transferred from Advanced Realty's escrow account and wired to Hymowitz and Freeman. Further, Hymowitz and Freeman had no entitlement to the $9,156.00 that they received from Advanced Realty's escrow account. The Respondent used funds belonging to Advanced Realty's clients when he transferred $9,156.00 from Advanced Realty's escrow account. Respondent never repaid the funds he wired from Advanced Realty's escrow account, the fees associated with that wire transfer and the returned deposit fees associated with the two non-negotiable Death Star checks.

Again, when Bar Counsel contacted Seltzer regarding his unauthorized withdrawals from Advanced Realty's operating and escrow accounts, Seltzer never responded to the complaint.

The Office of Bar Counsel mailed the Respondent letters on March 23, 2010 and April 6, 2010, requesting a response to Piper–Brandon's complaint. (Petitioner's Exhibit B–29 and 30). The Respondent never responded to Bar Counsel's request for information concerning the complaint of Piper–Brandon. On April 27, 2010, the Office of Bar Counsel e-

mailed the Respondent requesting a response to Piper–Brandon's Complaint. (Petitioner's Exhibit B–24). Although the Respondent responded to Bar Counsel's e-mail and agreed to respond the following Monday, he never provided a response to Piper–Brandon's Complaint. (Petitioner's Exhibit B–24).

Judge Bowman found, by clear and convincing evidence, that Seltzer's conduct, specifically the misappropriation of funds to which he was entrusted, established that he had violated Rules 8.4(a), (b), (c) and (d) and his failure to respond to the Piper–Brandon complaint, established he had violated Rule 8.1(b).

By his conduct, Respondent violated Maryland Rules of Professional Conduct 8.1(b), and 8.4(a), (b), (c), and (d) by converting funds to his own use from Advanced Realty's operating account, for misappropriating funds from Advanced Realty's escrow account and for failing to respond to Bar Counsel's request for information.

The Respondent violated Rule 8.1(b) by failing to respond to Bar Counsel's letters of March 23, 2010 and April 26, 2010. Thereafter, the Respondent acknowledged Bar Counsel's April 27, 2010 e-mail, however, still failed to provide a response to the Complaint of Piper–Brandon in violation of 8.1(b).

The Respondent violated Rules 8.4(a), (b), (c), and (d), when he withdrew funds from Advanced Realty's operating account and escrow account without entitlement. The monies the Respondent withdrew from Advanced Realty's operating account did not belong to him. Respondent withdrew a total of $2,300.00 and converted those funds for his own use without entitlement. The removal of the $2,300.00 from Advanced Realty's operating account was an act of deceit and an act of theft in violation of Rule 8.4(b) and (c). Further, when Respondent transferred, withdrew or wired funds from Advanced Realty's escrow account where there were no corresponding deposit(s) and no client(s) associated with those transfer(s), withdrawal(s) or wire(s), it resulted in a misappropriation of funds belonging to Advanced Real-

ty's client(s) in violation of Rules 8.4(b) and (c). Respondent's act of taking those funds was deceitful and a theft from Advanced Realty's clients. Further, the Respondent never repaid the funds he misappropriated. Respondent knew he was not entitled to the $14,656.00 he misappropriated from Advanced Realty's escrow account. Respondent's knowledge that he was not entitled to those funds is evidenced by his attempt to deposit $16,156.00 into Advanced Realty's escrow account. After Respondent misappropriated monies from Advanced Realty's escrow account, he then knowingly wrote two checks from his Death Star account and deposited them into Advanced Realty's escrow account knowing that those checks would not be honored. At the time the Respondent wrote the two Death Star checks, he did not have $16,156.00 in his Death Star account. At the time the Respondent wrote Death Star check number 2125, he had a zero balance in the account. (Petitioner's Exhibit B–27). At the time Respondent wrote the Death Star check number 2133, his balance in the Death Star account was $839.11. Therefore, Respondent knew he did not have the funds to replace the monies that he misappropriated from Advanced Realty's escrow account. Respondent's theft of funds belonging to Advanced Realty's clients violated Rule 8.4(a), (b), (c) and (d). Respondent's course of conduct of misappropriating funds is conduct prejudicial to the administration of justice in violation of Rule 8.4(d).

In summary, this Court finds that the Respondent violated Maryland Rules of Professional Conduct 8.1(b) and 8.4(a), (b), (c) and (d), in connection with the Jenkins and Piper–Brandon complaints.

Bar Counsel has not filed any exceptions to the hearing judge's Findings of Fact and Conclusions of Law and recommends disbarment. Seltzer also has not filed any exceptions, and he failed to appear at oral argument before this Court.[8]

---

**8.** Prior to oral argument, Sara B. Seltzer, the Respondent's wife, filed a "Motion for Postponement and in the Alternative Motion to Consent to Sanctions." In response, Bar Counsel moved to strike the motion for

After oral argument, a per curiam order disbarring Respondent was entered on October 7, 2011. The order stated:

For reasons to be stated in an opinion later to be filed, it is this 7th day of October, 2011,

ORDERED, by the Court of Appeals of Maryland, that the respondent, Aaron Gregory Seltzer, be, and he is hereby, disbarred, effective immediately, from the further practice of law in the State of Maryland; and it is further

ORDERED that the Clerk of this Court shall strike the name of Aaron Gregory Seltzer from the register of attorneys, and pursuant to Maryland Rule 16–713, shall certify that fact to the Trustees of the Client Protection Fund and the clerks of all judicial tribunals in the State; and it is further

ORDERED that respondent shall pay all costs as taxed by the Clerk of this Court, including the costs of all transcripts, pursuant to Maryland Rule 16–715(c), for which sum judgment is entered in favor of the Attorney Grievance Commission of Maryland against Aaron Gregory Seltzer.

We now state the reasons for our previously-issued order.

**Standard of Review**

"This Court has original and complete jurisdiction over attorney discipline proceedings in Maryland." *Attorney Grievance v. Stern*, 419 Md. 525, 556, 19 A.3d 904, 925 (2011), quoting *Attorney Grievance v. Nwadike*, 416 Md. 180, 192, 6 A.3d 287, 294 (2010). "In our independent review of the record, we accept the hearing judge's findings of fact as prima facie correct unless shown to be clearly erroneous." *Attorney Grievance v. Lara*, 418 Md. 355, 364, 14 A.3d 650, 656 (2011), citing *Attorney Grievance v. Palmer*, 417 Md. 185, 205, 9 A.3d 37, 49 (2010). If no exceptions are filed, we may treat the hearing judge's findings of fact as established for the purpose of determining the appropriate sanction. Rule 16–

postponement on grounds that Ms. Seltzer was "not admitted to the Bar of the State of Maryland and may not prepare or file motions on behalf of the Respondent." We granted Bar Counsel's motion.

759(b)(2)(A). We conduct an independent review of the hearing judge's conclusions of law. Rule 16–759(b)(1); *Stern,* 419 Md. at 556, 19 A.3d at 925.

## Discussion

We accept Judge Bowman's findings of fact as established by clear and convincing evidence, pursuant to Maryland Rule 16–759(b)(2)(A); no exceptions have been filed by either Bar Counsel or Seltzer.

We also agree that the findings of fact sufficiently establish that Seltzer violated Rules 8.4(a), (b), (c) and (d) when he continually misrepresented and deceived Ms. Jenkins, submitted fraudulent documents, and issued bad checks.

With respect to Rule 8.4(b), which prohibits a lawyer from committing "a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer," Seltzer's multiple fraudulent documents submitted to Ms. Jenkins, purportedly signed by representatives of Oppenheimer and Company, Inc. and a Chase Investment Services Group, who in reality were not affiliated with the companies, as well as a Chase bank statement detailing a trust account that did not exist, all in an effort to induce Ms. Jenkins's client to join in a contract of sale, constituted criminal acts. Section 7–104(b) of the Criminal Law Article, Maryland Code (2002),[9] for one, prohibits theft by deception with the intent to deprive the owner of the property. As to Ms. Jenkins's complaint, the facts establish that Seltzer knowingly attempted, through bad

---

**9.** Section 7–104(b) of the Criminal Law Article, Maryland Code (2002) provides:

(b) [Unauthorized control over property]—*By deception.*—A person may not obtain control over property by willfully or knowingly using deception, if the person:

(1) intends to deprive the owner of the property;

(2) willfully or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or

(3) uses, conceals, or abandons the property knowing the use, concealment, or abandonment probably will deprive the owner of the property.

checks and fraudulent documents, to defraud Ms. Jenkins and her client and induce them to enter a contract of sale.

When an attorney intentionally submits fraudulent documents to obtain pecuniary gain, Rule 8.4(c), which prohibits a lawyer from "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation," also is violated. That Seltzer engaged in deceitful conduct outside of the practice of law does not immunize the sanctionable nature of his behavior. *See, e.g., Attorney Grievance v. Jordan*, 386 Md. 583, 594, 873 A.2d 1161, 1167 (2005) (concluding that an attorney violated Rule 8.4(c) violated when she "intentionally submitted false documents to her [homeowner's] insurance company for the purpose of obtaining monetary benefits to which she was not entitled").

As to Rule 8.4(d), which defines professional misconduct as "engag[ing] in conduct that is prejudicial to the administration of justice," Seltzer's pattern of deceitful conduct with Ms. Jenkins was certainly prejudicial to the administration of justice because it is "conduct that impacts on the image or the perception . . . or the legal profession . . . and that engenders disrespect . . . and for the legal profession may be prejudicial to the administration of justice." *Attorney Grievance v. Marcalus*, 414 Md. 501, 522, 996 A.2d 350, 362 (2010), quoting *Attorney Grievance Comm'n v. Richardson*, 350 Md. 354, 368, 712 A.2d 525, 532 (1998). Attorney misconduct, especially when criminal or egregious, may violate Rule 8.4(b) even if it involves an act that is unrelated to legal practice. *Id.* at 521, 996 A.2d at 361; *see also Attorney Grievance v. Shryock*, 408 Md. 105, 125, 968 A.2d 593, 604–05 (2009) (Violations of Rules 8.4(b) and (c) generally "constitute violations of [Rule] 8.4(d), in that the conduct that supports a violation of [Rule] 8.4(b) and (c) amounts to conduct prejudicial to the administration of justice.").

As to Rule 8.4(a), which provides that it is misconduct to "violate or attempt to violate the Lawyers' Rules of Professional Conduct," it is well established that various rule violations, of themselves, are sufficient to support a violation.

*Attorney Grievance v. Webster*, 402 Md. 448, 468, 937 A.2d 161, 172 (2007). Seltzer's violations of Rules 8.4(b), (c) and (d) clearly support a violation of Rule 8.4(a).

■ With regard to Seltzer's conduct during Bar Counsel's investigation of Ms. Jenkins's complaint, we also conclude that he violated Rule 8.1(b), which prohibits a lawyer, in connection with a disciplinary matter, from "knowingly fail[ing] to respond to a lawful demand for information from ... [a] disciplinary authority." Seltzer received and failed to respond to two letters and four subpoenas from Bar Counsel requesting that he produce documents related to the Jenkins's complaint. He also failed to appear for his scheduled Statement Under Oath, which Seltzer rescheduled twice with the Office of Bar Counsel before finally failing to appear. Although Seltzer sent Bar Counsel an e-mail claiming that his poor health delayed his response, Seltzer ultimately did not provide any documents or statement regarding the complaint. Repeated failures to respond to Bar Counsel's letters, as we recognized in *Attorney Grievance v. Bleecker*, 414 Md. 147, 994 A.2d 928 (2010), are sufficient bases for us to agree with the hearing judge that Seltzer violated Rule 8.1(b).

■ With respect to the charges raised in Ms. Piper–Brandon's complaint, we likewise conclude that Seltzer's conversion and misappropriation of funds from Advanced Realty's operating and escrow accounts violated Rules 8.4(a), (b), (c) and (d), and his subsequent failure to respond to Bar Counsel's request for information violated Rule 8.1(b). The hearing judge's undisputed findings demonstrate that Seltzer converted funds from Advanced Realty's operating account for his own use, misappropriated funds from Advanced Realty's escrow account, and tried to cover up his misconduct by attempting to deposit multiple checks in Advanced Realty's accounts from the Death Star account, which Seltzer knew to be underfunded. As to Rule 8.4(b), Seltzer's multiple withdrawals of funds from the operating and escrow accounts constituted thievery and criminal acts that reflect adversely on Seltzer's honesty and trustworthiness.

With regard to Rule 8.4(c), which prohibits a lawyer from engaging in acts of dishonesty, fraud, deceit or misrepresentation, even when not practicing law, Seltzer clearly engaged in dishonesty when he removed, for personal use, funds to which he was entrusted and to which he was not entitled. *See Attorney Grievance v. Vanderlinde*, 364 Md. 376, 381, 386, 773 A.2d 463, 465, 469 (2001) (concluding that Rule 8.4(a), (b), and (c) was violated where attorney embezzled money from her employer).

Seltzer's misappropriation of his company's funds for his own use was clearly prejudicial to the administration of justice, in violation of Rule 8.4(d). *See Attorney Grievance Comm'n v. Goldsborough*, 330 Md. 342, 359, 624 A.2d 503, 511 (1993), citing *Attorney Grievance Comm'n v. Ezrin*, 312 Md. 603, 541 A.2d 966 (1988) (conversion of partnership funds as grounds for violation of Rule 8.4(d)). Finally, Seltzer's failure to respond to Bar Counsel's request for information again constituted a violation of Rule 8.1(b). These multiple rule violations are violative of Rule 8.4(a).

**Sanction**

Our primary goal in disciplining an attorney is to protect the public. *Bleecker*, 414 Md. at 176, 994 A.2d at 945. To effectuate that goal, we may consider, among other things, the following aggravating, non-exhaustive list of factors in Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) a pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of victim;

(i) substantial experience in the practice of law;

(j) indifference to making restitution.

*Id.* at 176–77, 994 A.2d at 945–46. Bar Counsel urges us to consider factors (b) and (d) in aggravation.

 Seltzer's dishonest and selfish motive are apparent throughout his misconduct with regard to Ms. Jenkins and Advanced Realty. He knowingly and willfully attempted to induce Ms. Jenkins and her client to enter a contract of sale through his provision of fraudulent documents and bad checks, and misappropriation of funds in the operating and escrow accounts of Advanced Realty, including funds which belonged to his clients. We have often stated that "intentional misappropriation of funds entrusted to an attorney's care is an act infected with deceit and dishonesty, and, in the absence of compelling extenuating circumstances justifying a lesser sanction, will result in disbarment." *Attorney Grievance v. Webster*, 402 Md. at 473, 937 A.2d at 175; *accord Attorney Grievance v. Spery*, 371 Md. 560, 810 A.2d 487 (2002).

Under factor (d), Seltzer's conduct was "egregious and violated multiple rules." *Bleecker*, 414 Md. at 178, 994 A.2d at 946. Seltzer developed multiple schemes to defraud and steal from others. In his real estate transactions, Seltzer misrepresented to the seller his dual roles in Allied and Village Green, issued bad checks, and provided fraudulent documents as to his financial stature, all in an effort to induce the seller to enter a contract of sale that Seltzer did not intend to honor. He made multiple withdrawals of funds to which he was not entitled.

 "[I]ntentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse," and thus fraud and misappropriation of client funds by lawyers for their own pecuniary gain, paired with repeated avoidance of Bar Counsel during investigation, warrant a grave sanction. *Vanderlinde*, 364 Md. at 418, 773 A.2d at 488; *Attorney Grievance v. Johnson*, 409 Md. 470, 508,

976 A.2d 245, 267 (2009) (disbarring two attorneys involved in a "fraudulent, equity-stripping transaction"); *Jordan,* 386 Md. at 600, 873 A.2d at 1171 (disbarring an attorney who submitted fraudulent documents to her homeowner's insurance company in order to receive monetary benefits to which she was not entitled); *Spery,* 371 Md. at 571, 810 A.2d at 493 (disbarring an attorney for intentionally and knowingly converting real estate partnership funds); *Vanderlinde,* 364 Md. at 419, 773 A.2d at 488 (disbarring an attorney who misappropriated $3,880.67 from her employer for her own use); *Attorney Grievance Comm'n v. Lazerow,* 320 Md. 507, 515–516, 578 A.2d 779, 783 (1990) (disbarring an attorney who misappropriated down payments of home purchasers in order to fund his business's construction of additional homes). In the instant case, we agree with Bar Counsel that Seltzer's "utter lack of truthfulness, creation of fraudulent documents and misappropriation of funds demonstrates that he is unfit to practice law."

Accordingly, we have disbarred the Respondent, Aaron G. Seltzer.