72 A.3d 548

### ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

### John Thanh HOANG.

**Misc. Docket AG No. 16, Sept. Term, 2009.**

Court of Appeals of Maryland.

Aug. 19, 2013.

Fletcher P. Thompson, Assistant Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for Petitioner.

No argument on behalf of Respondent.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BELL * and MURPHY,** JJ.

PER CURIAM.

The Attorney Grievance Commission, acting through Bar Counsel, filed a petition for disciplinary action against John Thanh Hoang for violation of the Maryland Lawyers Rules of Professional Conduct (MLRPC), alleging that Hoang violated the following provisions of MLRPC 8.4:

**Rule 8.4. Misconduct.**

It is professional misconduct for a lawyer to:

. . . .

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

---

* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

** Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court, but did not participate in the decision or adoption of this opinion.

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice. . . .

The facts of the misconduct are not in dispute. Hoang, an attorney admitted to practice in Maryland on June 25, 1986,[1] was a registered partner in Tax–Smart Technology Services ("Tax–Smart"), a Florida partnership offering tax strategies and tax preparation services from its office in Alexandria, Virginia. A tax strategy that Tax–Smart and Hoang, a then-partner and certified public accountant of Tax–Smart, created and sold to their customers was the sale of websites,[2] which was used by Hoang and Tax–Smart to fabricate an elaborate fraudulent tax deduction scheme.

This scheme was carried out by Hoang, via Tax–Smart, in several stages. First, Respondent would charge customers a fraction of a website's sales price by credit card or by assignment of a portion of a future federal tax refund, as well as require a down payment of 1/6 or 1/7 of the stated website sales price. The customer paid the balance of the website's sales price with an interest-bearing promissory note in installments over a nine-year period. At the same time that a customer would enter into Tax–Smart's website sales agreement, the customer would enter into a licensing agreement with Tax–Smart that licensed the business to use the source code operating the just-purchased website for a nine-year term. In exchange for the license, Tax–Smart would pay the customer an annual licensing fee.[3] The licensing fee equaled

---

1. On October 30, 2008, this Court decertified Hoang for failing to comply with his pro bono reporting requirements.

2. The websites consisted of a source code that registered the domain name to which the source code is later applied. Tax–Smart obtained the source code from a third party, Universal Interactive. The website sales contracts listed either Tax–Smart or Universal Interactive as the seller of the source code.

3. There was no exchange of money for the payment of the licensing fee. Rather, the transaction was consummated on paper.

the interest on a promissory note, given by the customer to Tax–Smart for the purchase of the website, and the principal at the end of the nine-year contractual period.[4]

As a result, Tax–Smart's strategies created illusory financial obligations for their customers: beyond their initial down payment when contracting with Tax–Smart to purchase a website, customers did not pay the actual market value of the websites because Tax–Smart sold the websites at stated prices vastly exceeding the value of a website's source code, domain name, and the value of the services necessary to operate the website. Customers earned greater returns when Hoang deducted 1/3 of the stated sale price of the website as a depreciative expense on Schedule C of customers' 1040 federal income tax returns for each of the first three years of Hoang's scheme. Hence, a customer was able to claim the entire listed website price as a business loss in the form of depreciation deductions over a three–year period, thereby reducing his or her tax liabilities.

Hoang employed this tax deduction scheme in the preparation of at least 527 tax returns for customers between 2003 and 2006. Respondent would create Schedule C returns with fictitious gross receipts, which were offset by losses from the purchase of the websites. Customers for whom Hoang prepared tax returns had other income from wages, salaries, or other sources and offset this income with business losses from fictional ventures. Furthermore, Respondent was able to reclaim for his customers a full year's depreciation deduction for the purported year of sale of the website by back-dating several contracts to January 1 of the year before the sale occurred. This strategy was extended further by Hoang's sale to multiple customers of the same source code applied to the same domain name. Compensation for Hoang's services

---

**4.** Tax Smart's annual licensing fee was accounted for in two parts. The first was used to offset the interest on the promissory note during accrued year and to reduce the principal. The second was held in reserve by Tax–Smart until the end of the nine-year contract period, which would then be used to offset the remaining balance on the promissory note.

was taken from a percentage of the refunds generated by his preparation of the fraudulent tax returns. Respondent promised his customers that he would defend any customer audited by the IRS.

In November 2005, the Internal Revenue Service ("IRS") notified Hoang that it intended to investigate the sale of the tax deduction strategy employed by Tax–Smart, as well as the associated Schedule C deductions. Tax–Smart and Hoang continued to sell the "product," and many of Tax–Smart customers' 2006 returns prepared by Hoang show he continued to make deductions using this strategy. None of the federal income tax returns examined by the IRS in which this strategy was used were determined to be correct. Hoang scheduled (and then canceled) appointments with the IRS concerning the audits of six customers, failed to provide requested documents, and refused to contact his audited customers. The IRS calculated that the tax deduction scheme cost the federal government approximately $11,600 per tax return, or $6,100,000 in 2003 alone.

On May 8, 2008, the U.S. Government filed a complaint for permanent injunction and other relief in the U.S. District Court for the Eastern District of Virginia against Hoang and Tax–Smart Technology Services, seeking to enjoin the fraudulent tax deduction scheme under 26 U.S.C. §§ 7402, 7407, and 7408. On May 12, the parties entered into an agreement in which Hoang, on behalf of himself individually and Tax–Smart, consented to the entry of a Stipulated Judgment of Permanent Injunction. Hoang agreed not to offer tax services that promote non-compliance with federal tax laws, participate in making false representations that customers may take tax deductions without regard to whether the customer is engaged in a bona fide business activity, or claim a tax deduction for software depreciation without regard to the true value of the software or whether the software is used in a legitimate business venture. Hoang agreed also not to prepare, file, or assist in preparing or filing any federal income tax returns for any person other than himself. In the course of the Government's investigation, it was discovered further that, as of May

12, 2008, Hoang had not filed his personal federal income tax returns for any tax years since 2000, which violated 26 U.S.C. §§ 6700, 6701, 6694, and 7203.

In February 2009, Bar Counsel filed charges against Hoang, charging him under MLRPC 8.4(b) (committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer); 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); and 8.4(d) (engaging in conduct that is prejudicial to the administration of justice). In accordance with Maryland Rule 16–709, we ordered that the matter be transmitted for hearing and the rendition of findings of fact and conclusions of law to the Honorable David A. Boynton of the Circuit Court for Montgomery County. Pursuant to the Order, Hoang was directed to respond to the charges filed by Bar Counsel within fifteen days of the date of service upon him of the Petition for Disciplinary Action. On June 22, 2009, personal service of a copy of the Petition for Disciplinary Action (the "Petition"), Writ of Summons, and Order was made properly upon Hoang by an investigator for the Attorney Grievance Commission at his last known address of 3985 Pearlberry Court, Woodbridge, VA 22193.

Respondent failed to respond to the Petition. On July 15, 2009, Bar Counsel requested this Court to enter an Order of Default against Hoang and to schedule a hearing on the charges. The request was granted. An Order of Default against Respondent was entered on July 30, 2009 for his failure to respond to the charges within the time permitted by the Order. A notice was sent to Hoang at his last known address, informing him that the Order of Default has been entered and that, pursuant to Md. Rule 2–613, he may move to vacate the Order within thirty days after entry of the Order. Respondent did not do so.

On September 4, 2009, a hearing on the Petition was conducted by Judge Boynton. Evidence admitted at the hearing included the affidavit of Sydney Hart, the IRS agent assigned to audit the tax returns prepared by Hoang and Tax–

Smart for their customers; the consent of Hoang to the entry of a Stipulated Judgment of Permanent Injunction against him and Tax–Smart that was filed in the U.S. District Court for the Eastern District of Virginia; and Bar Counsel's proposed findings of fact and conclusions of law. Respondent failed to appear or participate in the hearing.

Judge Boynton issued Findings of Fact and Conclusions of Law on December 14, 2009. Because Respondent failed to file a motion to vacate the default judgment entered against him on July 30, 2009, the hearing judge deemed the averments of Bar Counsel's Petition as admitted, pursuant to Md. Rules 754(c) and 2–323(e). By a standard of clear and convincing evidence (Md. Rule 16–757(b)), the hearing judge rendered findings of fact consistent with the facts iterated earlier in this opinion. Based on those findings, the hearing judge concluded as follows regarding the alleged MLRPC violations:

> The facts set forth ... indicate that Mr. Hoang violated Rule 8.4(b), which prohibits an attorney from engaging in criminal conduct that reflects adversely on his fitness to practice law, by devising and carrying out a scheme to defraud the United States Government of funds lawfully due to it by preparing tax returns with fraudulent deductions.[5]
>
> \* \* \* \* \* \*
>
> The facts ... show that Mr. Hoang prepared more than 500 tax returns which claimed fictitious gross receipts for fictitious businesses so that his clients could show business

---

5. The hearing judge noted that the applicable criminal statute was 26 U.S.C. § 7206(2), which provides, in relevant part:

 Any person who ... [w]illfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document ... shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 3 years, or both, together with the costs of prosecution.

losses by deducting inflated amounts for purchases of websites. These business losses were then used to reduce the tax liabilities of individuals who were salaried employees.

The Court of Appeals has held that the preparation of a fraudulent tax return in violation of 26 U.S.C. § 7206(1), which prohibits fraudulent conduct by those filing a return, is a crime of moral turpitude in a case involving the predecessor rule to M[L]RPC 8.4(b). *Attorney Grievance Commission v. Jacob*, [303 Md. 172, 180, 492 A.2d 905, 909 (1985)]. The preparation of a fraudulent return is also a violation of Rule 8.4(c), which prohibits attorneys from engaging in "conduct involving fraud, deceit or misrepresentation."

The facts also show that for a period of eight years, Mr. Hoang failed to file personal federal tax returns, in violation of 26 U.S.C. Section 7203. The failure to file personal tax returns is a violation of Rules 8.4(b), (c), and (d). *Attorney Grievance Commission v. Tayback*, [378 Md. 578, 590–92, 837 A.2d 158, 165–66 (2003)] (attorney failed to file federal and state returns for a period of three years). Respondent violated these rules for this reason as well.

The Respondent concocted a scheme to cheat the federal government by fraudulently reducing this clients' tax liabilities and taking a share of their refunds, in violation of Rule 8.4(b), (c), and (d).

No exceptions were filed to the hearing judge's Findings of Fact and Conclusions of Law. Bar Counsel recommended disbarment as the appropriate sanction.

## DISCUSSION

 This Court has original and complete jurisdiction over all Maryland attorney discipline proceedings. *Att'y Griev. Comm'n v. Nwadike*, 416 Md. 180, 192, 6 A.3d 287, 294 (2010). Although we conduct an independent review of the record, we accept the hearing judge's findings of fact unless they are shown to be clearly erroneous. *Att'y Griev. Comm'n v. Stinson*, 428 Md. 147, 173–74, 50 A.3d 1222, 1238 (2012).

Where neither party files exceptions to the hearing judge's findings of fact, we treat those findings "as established for the purpose of determining appropriate sanctions." Md. Rule 16–759(b)(2)(A). The Court reviews the hearing judge's conclusions of law without deference. *Att'y Griev. Comm'n v. Lara,* 418 Md. 355, 364, 14 A.3d 650, 656 (2011); Md. Rule 16–759(b)(1).

As no exceptions were filed by either Bar Counsel or Respondent, we accept Judge Boynton's Findings of Fact as established by clear and convincing evidence, pursuant to Maryland Rule 16–759(b)(2)(A). Based on our non-deferential review of the record, we agree with the hearing judge that Respondent's misconduct violated MLRPC 8.4(b), (c), and (d).

## A. Respondent's Violations of MLRPC 8.4(b), (c), and (d)

While he was a certified public account and partner of Tax–Smart, Respondent designed a long-term, elaborate, and duplicitous scheme to defraud the U.S. Government by preparing for his clients more than 500 federal income tax returns that claimed false gross receipts for illusory businesses, enabling his clients to show business losses through deductions of significantly above-market-value amounts for purchased websites. Respondent claimed his compensation by taking a percentage of the refunds generated by his preparation of the fraudulent tax returns.

We have previously held that a lawyer's intentional false and fraudulent preparation of tax returns, whether on his, her, or on behalf of others, is conduct " 'infested with fraud, deceit, and dishonesty[.]' " *Att'y Griev. Comm'n v. Swerdloff,* 279 Md. 296, 298–99, 369 A.2d 75, 76 (1977) (where a lawyer fraudulently subscribed to a joint income tax return by understating his taxable income) (quoting *Maryland St. Bar Ass'n v. Agnew,* 271 Md. 543, 551, 318 A.2d 811, 815 (1974)); *Att'y Griev. Comm'n v. Deutsch,* 294 Md. 353, 366, 450 A.2d 1265, 1271 (1982) (holding that a lawyer knowingly falsifying a tax return "by understating income is dishonest").

Because criminal attorney misconduct "may violate rule 8.4(b) even if it involves an act that is unrelated to legal practice[,]" Hoang's gross criminal misconduct committed as a certified public accountant and partner at Tax–Smart reflects adversely on his "honesty, trustworthiness or fitness as a lawyer in other respects." MLRPC 8.4(b); *see Att'y Griev. Comm'n v. Seltzer*, 424 Md. 94, 113, 34 A.3d 498, 510 (2011). Likewise, Hoang's fraudulent tax deduction scheme is a plain violation of MLRPC 8.4(c), which prohibits lawyers from engaging in acts involving deceit, fraud, or misrepresentation.

Lastly, it is well-settled that a lawyer's willful failure to file his or her personal income tax returns violates the prohibition of Rule 8.4(d) of engaging in conduct prejudicial to the administration of justice. *Att'y Griev. Comm'n v. Rand*, 411 Md. 83, 98, 981 A.2d 1234, 1243 (2009); *see Att'y Griev. Comm'n v. Tayback*, 378 Md. 578, 592, 837 A.2d 158, 166 (2003) (holding that the lawyer's failure to file tax returns and pay taxes over three years constituted conduct prejudicial to the administration of justice); *Att'y Griev. Comm'n v. Walman*, 280 Md. 453, 463, 374 A.2d 354, 360 (1977) (a lawyer who was convicted of knowingly and willfully failing to file his federal income tax return for one year engaged in conduct prejudicial to the administration of justice). Hoang violated MLRPC Rule 8.4(d) by failing to file personal federal tax returns for the years 2000 until May 12, 2008.

Moreover, we have held that a repeated failure to file income tax returns "is not a minor criminal offense, [but rather] is a dishonest act, and reflects adversely on a lawyer's honesty, trustworthiness and fitness to practice law" and thus is a violation of MLRPC 8.4(c). *Att'y Griev. Comm'n v. Atkinson*, 357 Md. 646, 655, 745 A.2d 1086, 1091 (2000). Hence, we conclude that Hoang also violated MLRPC 8.4(c) by not filing his personal federal income tax returns.

## B. The Appropriate Sanction

This Court has the responsibility "to insist upon the maintenance of the integrity of the bar and to prevent the transgression of an individual lawyer from bringing its image

into disrepute." *Att'y Griev. Comm'n v. Myers,* 333 Md. 440, 447, 635 A.2d 1315, 1318 (1994) (quoting *Agnew,* 271 Md. at 549, 318 A.2d at 814). Moreover, it is well recognized that the public interest at stake in attorney disciplinary proceedings is best served "when this Court imposes a sanction which demonstrates to members of the legal profession the type of conduct that will not be tolerated." *Myers,* 333 Md. at 447, 635 A.2d at 1318.

An attorney's intentional dishonest conduct, "[u]nlike matters relating to competency, diligence, and the like, . . . is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse." *Att'y Griev. Comm'n v. Vanderlinde,* 364 Md. 376, 418, 773 A.2d 463, 488 (2001). We have held that, absent extenuating compelling circumstances, disbarment is the appropriate sanction when a lawyer knowingly falsifies income tax returns. *Att'y Griev. Comm'n v. Casalino,* 335 Md. 446, 452–53, 644 A.2d 43, 46 (1994) (where the lawyer was convicted of tax evasion for filing fraudulent tax returns); *see Att'y Griev. Comm'n v. Clinton,* 308 Md. 701, 705, 521 A.2d 1202, 1204 (1987); *Bar Ass'n of Balto. City v. Siegel,* 275 Md. 521, 524, 340 A.2d 710, 712 (1975); *Agnew,* 271 Md. at 551, 318 A.2d at 815.

In the present case, Respondent engaged in a pattern of planned and deliberate fraudulent misconduct by devising and receiving compensation from a lengthy and elaborate tax deduction scheme for his clients. Because there is "no significant moral distinction between willfully defrauding and cheating for personal gain a client, an individual, or the government," Respondent is held accountable to the professional ethical obligations of an attorney whether he engages in the practice of law or any other endeavor. *Agnew,* 271 Md. at 550, 318 A.2d at 815; *see Att'y Griev. Comm'n v. Silk,* 279 Md. 345, 348, 369 A.2d 70, 71 (1977) ("[T]here appears to be no sound reason for regarding misappropriations committed in a non-professional capacity more leniently than those committed in a professional capacity. Each involves a breach of trust or

of a fiduciary relationship and bear[s] equally on the fitness of a lawyer to practice his profession."). Furthermore, Hoang failed to file tax returns for a period of eight years. In light of the severity of his misconduct and because Respondent did not provide any evidence of mitigating circumstances, we conclude that Respondent be disbarred.

IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO RULE 16–761 FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST JOHN THANH HOANG.