*Attorney Grievance Commission v. Shauntese Curry Trye*
Misc. Docket AG No. 34, September 2014 Term


**Attorney Discipline - Intentional Misrepresentation - Fraudulent Alteration of Draft Settlement Agreement - Disbarment**. Disbarment is the appropriate sanction when an attorney makes intentional material misrepresentations on a loan modification application, makes purposeful false representations to opposing counsel and the circuit court concerning compliance with her discovery obligations, and fraudulently alters a negotiated draft settlement agreement and consent order before providing them to the opposing party and counsel for signature.

MLRPC 3.2, 3.3(a)(1) & (4), 3.4(c) & (d), 4.1(a)(1), 4.2(a), 8.4(c) & (d).

Circuit Court for Baltimore City
Case No. 24-C-14-004854
Argued: May 12, 2015

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 34

September Term, 2014

———————————————————

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

SHAUNTESE CURRY TRYE

———————————————————

Barbera, C.J.
*Harrell,
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

———————————————————

Opinion by McDonald, J.
Harrell and Battaglia, JJ., concur.

———————————————————

Filed: July 27, 2015

*Harrell, J., now retired, participated in the hearing and conference of the case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

There is a saying, sometimes attributed to Abraham Lincoln, that a lawyer who represents himself has a fool for a client. A corollary, perhaps, is that such a client has a lawyer who may be blinded by self-interest to the standards of professional conduct. This case concerns an attorney who represented herself for a time in her own divorce litigation, and who made some unfortunate choices that included misrepresentations to the court, a mortgage lender, and others, and the deceptive alteration of draft settlement documents for her own advantage. As a result, she loses her license to practice law in Maryland.

## I

## Background

### A.    *Procedural Context*

On August 1, 2014, the Attorney Grievance Commission of Maryland ("Commission") filed a Petition for Disciplinary or Remedial Action against Shauntese Curry Trye alleging several violations of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") arising out of an alleged fraudulent power of attorney, alleged fraudulent transfer of real property, misrepresentations to a mortgage lender, misconduct in her divorce litigation (including the fraudulent alteration of a draft settlement agreement and consent order), misrepresentation in a military service affidavit, and the failure to file income tax returns for several years. The Commission alleged that Ms. Trye violated MLRPC 3.2 (expediting litigation) 3.3(a)(1) & (4) (false statement to tribunal), 3.4(c) & (d) (fairness to opposing party), 4.1(a) (false statement to third party), 4.2 (communication with person represented by counsel), 8.4(c) (dishonest conduct) and 8.4(d) (conduct prejudicial to the administration of justice).

This Court designated Judge Videtta Brown of the Circuit Court for Baltimore City to conduct an evidentiary hearing, and to provide findings of facts and recommended conclusions of law regarding the alleged violations.

Following the hearing, the hearing judge issued a memorandum detailing her findings of fact and conclusions of law. The hearing judge found clear and convincing evidence that Ms. Trye committed some, but not all, of the alleged violations of the MLRPC. Ms. Trye filed exceptions to both the findings of fact and conclusions of law. The Commission excepted to some of the conclusions of law, arguing that the facts found by the hearing judge proved all of the charged violations. This Court held oral argument on May 12, 2015, to consider the parties' exceptions and recommendations as to sanction.

**B.     Facts**

We accept the hearing judge's findings of fact unless clearly erroneous. Maryland Rule 16–759(b)(2)(B). The hearing judge's findings of facts and the undisputed matters in the record provide the basis for the facts which follow. Ms. Trye's exceptions to the findings of fact are discussed below with the findings to which they relate.

*Bar Admission*

Ms. Trye was admitted to the Maryland Bar on December 16, 2003. Since her admission, she has practiced law in Baltimore as a solo practitioner and as a partner in various law firms.

2

*Marriage*

In September 2003, Ms. Trye married Stephen Trye. To their union, one child was born. In June 2012, Ms. Trye filed for divorce in the Circuit Court for Baltimore County. According to court records, a judgment of absolute divorce was ultimately entered on April 23, 2015.[1]

*Real Property Related to Allegations of Misconduct*

Pertinent to this case, Ms. Trye and Mr. Trye maintained the following two properties during their marriage: (1) 1304 Idylwood Road, Pikesville, Maryland ("Idylwood Road property") and (2) 11 Whispering Court, Owings Mills, Maryland ("Whispering Court property").[2] Mr. Trye had owned the Idylwood Road property prior to the marriage. During the marriage, Mr. Trye alone purchased the Whispering Court property, in which the couple resided together for a time.

*Transfer of Title to Idylwood Road Property*

Mr. Trye was incarcerated for a period of time during the years 2002 through 2005.[3] During his imprisonment, Mr. Trye executed at least two powers of attorney ("POA")

---

[1] According to the court record, Ms. Trye then resumed her maiden name, Shauntese Curry. Because she is still listed under her married name with the Client Protection Fund (as well as in the papers in this case), we refer to the Respondent as Ms. Trye in this opinion to avoid confusion.

[2] Mr. and Ms. Trye owned other properties during their marriage. Only these two are pertinent to this proceeding.

[3] Mr. Trye was incarcerated for possession with intent to distribute marijuana.

naming Ms. Trye as his agent.[4]  On June 23, 2004, the Idylwood Road property was conveyed from Mr. Trye to Mr. and Ms. Trye as tenants by the entirety.  On October, 14, 2004, the property was again conveyed, this time from Mr. and Ms. Trye to Ms. Trye alone. Ms. Trye prepared this deed and signed her name as Mr. Trye's attorney in fact.

The Commission alleged that Ms. Trye had fraudulently re-titled the property to encumber it with loans for her own benefit.  Based on the testimony of both Mr. and Ms. Trye, the hearing judge concluded that they were both trying to re-finance the Idylwood Road property at a time when Mr. Trye was in prison and that the POAs and title transfers were related to that effort.  The hearing judge concluded that there was no evidence of fraud on Ms. Trye's part in the creation of the POAs and the deeds – in particular, that there was not clear and convincing evidence that the transfer of title to the Idylwood Road property to Ms. Trye alone was fraudulent.

*False Representation on Loan Modification Request for Idylwood Road Property*

During 2013, Ms. Trye submitted applications for loan modifications with respect to the Idylwood Road property to GMAC Mortgage ("GMAC") and OCWEN Loan Servicing, LLC. ("OCWEN").  In connection with those applications, Ms. Trye represented, on various occasions, to GMAC, OCWEN, or both that the Idylwood Road property was owner-

[4] One such POA, executed by Mr. Trye on January 21, 2005, was introduced into evidence at the hearing.  It gave Ms. Trye general powers "to be my agent and attorney, for me, in my name, place and stead and on my behalf to act in any way in which I myself could act, if I were personally present…."  The POA also gave Ms. Trye the power to "sell [or] lease for any period of time… any property…"  Although the transactions described in the text occurred before the 2005 POA was executed, both Ms. Trye and Mr. Trye testified that Mr. Trye signed similar POAs before those transactions.

occupied, her primary residence, not a rental property, or vacant at the time of the application. The hearing judge found that all of those representations were false.

In fact, at the time of applications, Ms. Trye did not live in the Idylwood Road property, but rented it to Melvin and Rebecca Truesdale. Although the Truesdales had originally dealt with Mr. Trye as their landlord, in August 2012 Ms. Trye directed them to make rental payments directly to her bank account. She never terminated their lease or evicted them. From January to March 2013 and May to September 2013, Ms. Trye received and accepted rental payments from the Truesdales. During her testimony in her divorce case on June 6, 2013, in the Circuit Court for Baltimore County, she stated that she intended for the Truesdales to remain in the Idylwood Road property.

The hearing judge found that, from 2006 to 2013 (except for a short period of time), Ms. Trye lived exclusively at the Whispering Court property and intended to stay there. In an email dated March 15, 2013 relating to the foreclosure of the Whispering Court property, Ms. Trye explained, "I currently reside in the home with my four year old son… I anticipate the Court awarding me three years use and possession of the family home… In addition, I have been granted exclusive use and possession of the home until December 17, 2014… I am interested in continuing to live in the home…"

The hearing judge found that Ms. Trye knowingly misrepresented that the Idylwood Road property was her primary residence, was owner-occupied, was not a rental property, or was vacant at the time of her loan modification application in order to obtain a more favorable modification. Ms. Trye testified that she believed that the term "primary

5

residence" meant "property you own." The hearing judge found that her testimony was not credible and found that Ms. Trye knew the Idylwood Road property was not her primary residence and that she never intended for it to be her primary residence.[5]

*Discovery Violations in Divorce Case*

In June 2012, Ms. Trye filed for divorce from Mr. Trye in the Circuit Court for Baltimore County. Ms. Trye represented herself for much of the case, although she eventually retained Anthony Butler as her attorney. During the proceedings pertinent to this case, Mr. Trye was represented by Michael Hamburg.

On March 5, 2013, Mr. Hamburg filed a motion for sanctions against Ms. Trye for her failure to respond to discovery. Mr. Hamburg submitted documentation that Ms. Trye had been served with interrogatories and a request for production of documents, yet failed to respond. When Ms. Trye failed to respond to a second request for production of documents and failed to appear for deposition scheduled for March 22, 2013, and after attempting to

---

[5] Ms. Trye argues that the hearing judge erred in finding that she misrepresented the status of the Idylwood Road property to GMAC and OCWEN. She asserts that she expected to be evicted by Mr. Trye from the Whispering Court property, that she always intended to live at the Idylwood Road property once the loan modification occurred, and that GMAC and OCWEN were aware of her plans. Ms. Trye presented no evidence supporting that contention other than her own testimony. Her contemporaneous statement that she planned to remain in the Whispering Court property and her statement in the divorce case that she had no intention of evicting the tenants in the Idylwood Road property contradicted that assertion. Moreover, Ms. Trye admittedly had not lived at the Idylwood Road property since 2007. The hearing judge's finding that Ms. Trye misrepresented the status of the Idylwood Road property during the loan modification process is not clearly erroneous. We overrule the exception.

resolve the discovery issues by letter and e-mail, Mr. Hamburg filed additional motions for sanctions.

On June 6, 2013, the Circuit Court for Baltimore County held a motions hearing. Upon questioning about whether she had responsive documents in her possession, Ms. Trye stated she had issued three subpoenas, one of which she had sent to E-Mortgage Management Corporation ("E-Mortgage"). Ms. Trye said that she did not receive any documents from E-Mortgage. However, Mr. Hamburg noted that she had attached documents from E-Mortgage in a previous pleading. Ms. Trye then admitted that she had received documents from E-Mortgage in response to the subpoena and claimed to have sent these documents to Mr. Hamburg via e-mail. The circuit court in the divorce proceeding ordered Ms. Trye to provide evidence of that e-mail, but Ms. Trye failed to produce such an e-mail.

At the June 6, 2013 hearing, the circuit court also inquired as to whether Ms. Trye had subpoenaed other documents and whether she had produced any such documents to Mr. Hamburg. Ms. Trye answered that she had issued only three subpoenas. Mr. Hamburg then provided evidence that Ms. Trye had issued an additional subpoena for Mr. Trye's bank records at Bank of America. Ms. Trye had not provided a copy of that subpoena to Mr. Hamburg.

At the conclusion of the June 6, 2013 hearing, the circuit court ordered Ms. Trye to produce the requested documents and ordered her to attend a deposition in the courthouse scheduled for July 19, 2013 at 9:30 a.m. Ms. Trye failed to provide the documents required by the order and failed to attend the deposition. On September 17, 2013, following the filing

of yet another motion for sanctions by Mr. Hamburg, the court issued an Order for Sanctions and an Award for Fees against Ms. Trye.[6]

The hearing judge found that Ms. Trye knowingly made false statements to the circuit court during the June 6, 2013 hearing. Specifically, Ms. Trye misrepresented to the court that she had not receive subpoenaed documents from E-Mortgage Corporation and that she did not subpoena documents from Bank of America. In addition, Ms. Trye purposefully

---

[6] In her exception, Ms. Trye contends that she had complied with some discovery requests on February 8, 2013. Ms. Trye also argues that she did not receive proper notice to attend the originally scheduled deposition. She states that she did not appear for the court-ordered deposition on July 19, 2013 at 9:30 a.m. because she assumed that the deposition was scheduled for the same time as the originally scheduled deposition – 10:00 a.m. – even though the written court order stated the earlier time.

Although Ms. Trye offers several excuses for her failure to comply with various discovery requests, she apparently does not dispute the basic elements of the hearing judge's fact finding – that, after the circuit court ordered Ms. Trye to produce the E-Mortgage and Bank of America documents and to appear for her deposition, Ms. Trye failed to do so. In addition, the hearing judge was entitled to credit the testimony of Mr. Hamburg that Ms. Trye did not appear, even though he waited until approximately 10:15 a.m. at the room scheduled for the deposition and to disbelieve the testimony of Ms. Trye that she failed to appear for the deposition because of a mistaken belief about the starting time. *See Attorney Grievance Comm'n v. Zimmerman*, 428 Md. 119, 137, 50 A.3d 1205 (2012) (deference to the hearing judge's credibility findings is appropriate because of the judge's ability to assess the witnesses' demeanor-based credibility).

In her exception, Ms. Trye also accuses Mr. Hamburg of failing to comply with her discovery requests. These allegations are not supported by evidence in the record and, in any event, the question of Mr. Hamburg's compliance with discovery requests is not before us. Accordingly, we do not discuss these allegations.

failed to comply with discovery requests and discovery orders and purposefully failed to comply with the court's order to attend the deposition on July 19, 2013.[7]

*Testimony Concern Whispering Court Property Value*

The Commission alleged that Ms. Trye had made contradictory statements in the divorce litigation about the value of the Whispering Court property – in particular, whether there was any equity in the property. During the June 6, 2013 hearing in her divorce proceeding, Ms. Trye was asked about the value of her residence – the Whispering Court property. She testified under oath that she "[did not] believe the house [was] under water" and that "there [was] some equity" in the property. She testified that, if the property had to be sold, the sale price would be between $369,000 and $379,000. The hearing judge found that this testimony was not a misrepresentation of the Whispering Court's property value because Ms. Trye testified only to what she *believed* the property was worth.

*Fraudulent Alteration of the Draft Settlement Agreement and Consent Order*

After Ms. Trye retained Anthony Butler to represent her in the divorce proceedings, the parties engaged in settlement discussions. The parties reached agreement on child custody and the division of property, which was to be reduced to writing in a settlement agreement and consent order. Mr. Butler e-mailed a draft settlement agreement and consent

---

[7] In her exception, Ms. Trye asserts that the hearing judge erred in concluding that her false statements to the circuit court were intentional. Ms. Trye argues that her statements were the product of a faulty memory and that, once she refreshed her recollection, she corrected them. This argument depends solely on her own testimony, which the hearing judge did not find credible. We defer to the hearing judge's assessment of credibility and overrule the exception.

order to Mr. Hamburg. Both documents included language on child custody that read, in pertinent part, that "the parties shall have *shared legal and physical custody* of their minor child[.]" Mr. Hamburg and Mr. Butler agreed to present the executed settlement agreement and consent order to the court on October 4, 2013.

On the evening of October 3, Ms. Trye gave Mr. Trye a sealed envelope purportedly containing the agreed-upon draft settlement agreement and consent order. Ms. Trye told Mr. Trye that she would be unable to attend the October 4 hearing and had already signed the documents in the envelope. Mr. Trye did not open the envelope until the following day, when he and both counsel signed the documents in the courthouse, assuming that the documents reflected the agreement that the parties had reached the previous day.

After leaving the courthouse, Mr. Hamburg realized that the documents that Mr. Trye had received from Ms. Trye did not match the originals drafted by Mr. Butler. Specifically, the provision that "the parties shall have shared legal and physical custody of their minor child…" had been altered to "the parties shall have shared legal and Plaintiff [Ms. Trye] shall have primary physical custody of their minor child…" Neither Mr. Hamburg nor Mr. Trye had consented to the alterations. Following that discovery, the parties returned to court on October 8, 2013 with their respective counsel and executed a revised settlement agreement and consent order that accurately reflected the negotiated terms as to custody and submitted it to the court.

Before the hearing judge, Ms. Trye testified that she altered the documents because she and Mr. Trye had agreed to change the custody order to give her primary physical

custody of the child. (Mr. Trye denied any such agreement in his own testimony). The hearing judge did not find her testimony credible. The hearing judge found that Ms. Trye purposefully altered the agreed-upon terms of the settlement agreement and consent order without the knowledge or permission of Mr. Trye and Mr. Hamburg.[8]

*Communication with a Represented Person*

From the time she filed her divorce case in June 2012 through August 2013, Ms. Trye represented herself in that case. Throughout 2013, Mr. Hamburg represented Mr. Trye in the divorce litigation. Although she was aware that Mr. Trye had retained counsel, Ms. Trye sent several text messages and spoke with Mr. Trye on numerous occasions regarding the divorce case. The hearing judge found that she did so, even after Mr. Hamburg requested that she terminate direct communication with his client about the litigation. The hearing judge specifically referred to the meeting that Ms. Trye initiated with Mr. Trye on October 3, 2013 when she gave him the envelope with altered settlement drafts.

Ms. Trye does not appear to deny that she communicated with Mr. Trye without the presence of his counsel. Rather, she argues that the communications that took place were

---

[8] In her exception, Ms. Trye essentially argues that the hearing judge should have believed her testimony that it was Mr. Hamburg who had altered the agreed-upon terms. The hearing judge rejected that testimony in favor of other testimony indicating that it was Ms. Trye who had done so. The draft documents emailed by Mr. Butler, Ms. Trye's attorney, to Mr. Hamburg provided for shared physical custody of the child. Mr. Trye and Mr. Hamburg both testified that Ms. Trye represented that the executed documents that she provided to Mr. Trye incorporated the negotiated terms, when in fact Ms. Trye had changed the terms to make them more favorable to herself. The hearing judge was not clearly erroneous in finding that Ms. Trye altered the consent order and settlement agreement for her own advantage without informing Mr. Trye or Mr. Hamburg.

authorized by Mr. Hamburg – or at least did not come within the category of subjects that Mr. Hamburg had forbidden her to discuss with his client. Her exception is more pertinent to the legal issue of whether the communications violated MLRPC 4.2 and we thus discuss it in more detail in that context.

*Misrepresentation in Military Service Affidavit*

On July 12, 2013, Ms. Trye filed a complaint in the District Court against a former client, Christian Scott, to recover unpaid legal fees. In the complaint, Ms. Trye averred, under the penalties of perjury, that Mr. Scott was not in the military. Her complaint stated that she was able to confirm that Mr. Scott was not in the military because he "was a former client and indicated, when asked, that he was never in the military."

At the hearing in this proceeding, Mr. Scott testified that, while he had never served in the military, Ms. Trye had never inquired as to his military service. Although Ms. Trye testified as that she employed extensive intake procedures for new clients, she provided no documentation, such as a file record or intake sheet noting a determination of Mr. Scott's military status.

The hearing judge found that Ms. Trye misrepresented Mr. Scott's military status, as well as the basis of her knowledge of Mr. Scott's military status, on a court document. In her exception, Ms. Trye argues that the hearing judge's finding was clearly erroneous. We agree with her in part. Ms. Trye indicated in her District Court complaint that Mr. Scott was not in the military – a statement that, it is undisputed, is true. Mr. Scott himself testified before the hearing judge that he had never served in the military. The hearing judge thus clearly

12

erred in finding that Ms. Trye misrepresented Mr. Scott's military status. However, we do not disturb the hearing judge's finding that Ms. Trye misrepresented the basis of her knowledge as to Mr. Scott's military status. Ms. Trye failed to produce any documentation supporting her description of her intake interview, which was contradicted by Mr. Scott, and the hearing judge did not find her testimony credible. We thus grant the exception in part and deny it in part.

*Failure to File Income Tax Returns*

Ms. Trye admitted in her response to the Commission's petition that she failed to file federal and state income tax returns for the years 2009, 2010, 2012, and 2013. In her exception, Ms. Trye argues that her failure to file was not willful as she had difficulty filing her returns because of the need for cooperation by her husband and because her former law firm is currently in the process of dissolution.

The Commission did not allege that the failure to file returns was willful and the hearing judge made no finding in that respect. We discuss the significance of the question of "willfulness" in greater detail below with respect to the alleged violation of MLRPC 8.4(d).

## II

## Discussion

The hearing judge concluded that Ms. Trye violated MLRPC 3.2, 3.4(c) & (d), 4.2 (a), 8.4(c) & (d), but that she did not violate 3.3(a)(1) & (4), 4.1(a)(1) & (2). Ms. Trye excepted to the hearing judge's proposed conclusions that she had committed any violations. The Commission filed an exception to the hearing judge's proposed conclusions that Ms. Trye had not committed certain violations. The Commission asserts that the intentional misconduct and purposeful misrepresentations found by the hearing judge support the conclusion that Ms. Trye committed those violations as well.

This Court reviews conclusions of law by the hearing judge *de novo*. Maryland Rule 16–759(b)(1). In the course of that review, we consider the parties' exceptions.

### MLRPC 3.2 – Expedite Litigation

MLRPC 3.2 states:

> A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

The failure to comply with discovery requests, resulting in court-ordered sanctions, is a violation of MLRPC 3.2. *Attorney Grievance Comm'n v. Steinberg*, 395 Md. 337, 365-66, 910 A.2d 429 (2006) (failure of attorney to respond to discovery requests and repeated delay of depositions, ultimately resulting in an award of sanctions, violated MLRPC 3.2). In addition, the failure to attend a court-ordered deposition constitutes a violation of MLRPC 3.2. *Attorney Grievance Comm'n v. Culver*, 381 Md. 241, 279-83, 849 A.2d 423 (2004).

14

Ms. Trye failed to comply with discovery requests resulting in the imposition of sanctions and failed to attend the court-ordered deposition. Accordingly, she violated MLRPC 3.2.

Ms. Trye argues that, since she represented herself during the divorce proceeding and did not represent the interests of a "client," MLRPC 3.2 does not apply. The phrase "consistent with the interests of a client" in MLRPC 3.2 does not except attorneys who represent themselves from the obligation to make reasonable efforts to expedite litigation. Rather, this language is a qualifier on the lawyer's duty to expedite litigation. What is considered reasonable will depend in part on how the pace of the litigation affects the client's interests.[9] Thus, Ms. Trye is not excused from her obligations to the court and to the opposing party to make reasonable efforts to expedite the litigation merely because she did not have a client separate from herself. The hearing judge found that Ms. Trye purposefully failed to comply with her discovery obligations, including attendance at the court-ordered deposition, and that she made knowing misrepresentations to the presiding judge about her lack of compliance. Misrepresentation and purposeful obstruction of discovery is not a reasonable way of accommodating the duty to expedite litigation with the interests of a client.

---

[9] For a more detailed discussion regarding instances where a lawyer's duty to expedite litigation and the interests of a client may come into conflict, *see* Ernest F. Lidge, III, *Client Interests and a Lawyer's Duty to Expedite Litigation: Does Model Rule 3.2 Impose Any Independent Obligations?*, 83 St. John's L. Rev. 307 (Winter 2009).

15

***MLRPC 3.3 – Candor Toward the Tribunal***

MLRPC 3.3(a) provides, in pertinent part:

A lawyer shall not knowingly:

(1)     make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

\*     \*     \*

(4)     offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

MLRPC 3.3 is directed at attorneys acting in a representational capacity. *See Attorney Grievance Comm'n v. Van Dusen*, ___ Md. ___, Slip op. at 13 (June 23, 2015). This Court has not excluded from the application of MLRPC 3.3 those attorneys who represent themselves in litigation. *See Attorney Grievance Comm'n v. Myers*, 333 Md. 440, 442-44, 635 A.2d 1315 (1994) (finding a violation of MLRPC 3.3 where an attorney misrepresented his traffic record in the District Court, indicating he had no points on his driver's license when in fact he did).

As noted with respect to the violation of MLRPC 3.2, the hearing judge found that Ms. Trye made several knowing misrepresentations in the circuit court during her divorce case, most notably to the judge presiding over that case. Such conduct violates MLRPC 3.3(a)(1) & (4). This was not among the violations noted by the hearing judge. Accordingly, we grant the Commission's exception in this regard.

16

***MLRPC 3.4 – Fairness to Opposing Party and Counsel***

MLRPC 3.4 provides, in pertinent part:

A lawyer shall not:

\*        \*        \*

(c)      knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;

(d)      in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party;

The deliberate failure to produce documents in discovery or to appear for deposition in compliance with discovery requests and a court order is a violation of MLRPC 3.4. *Steinberg*, 395 Md. at 365-67, (finding that an attorney violated MLRPC 3.4 after repeatedly delaying the discovery process, delaying depositions, and failing to provide requested documents); *Attorney Grievance Comm'n v. Mininsohn*, 380 Md. 536, 568-70, 846 A.2d 353 (2004) (finding MLRPC 3.4 violated when an attorney missed two hearings due to unawareness of the first hearing, and unsubstantiated claims that he could not travel to the second hearing due to inclement weather).

Ms. Trye repeatedly failed to produce discovery materials and failed to attend a court-ordered deposition.  The hearing judge found that Ms. Trye purposefully failed to comply with the court order requiring her to submit to a deposition.  We agree with the hearing judge that this was a violation of MLRPC 3.4.

### MLRPC 4.1 – Truthfulness in Statements to Others

MLRPC 4.1(a)(1) reads:

> In the course of representing a client, a lawyer shall not knowingly ... make a false statement of material fact or law to a third person;

MLRPC 4.1(a)(1) requires that a lawyer be truthful when dealing with others in litigation. Comment [1]. An intentional misrepresentation of material fact to opposing counsel violates MLRPC 4.1. *Attorney Grievance Comm'n v. Mixter*, 441 Md. 416, 473, 109 A.3d 1 (2015) (concluding that misrepresentation of material fact to opposing counsel violated MLRPC 4.1). The hearing judge found that Ms. Trye intentionally misrepresented to the opposing counsel during her divorce proceedings what documents she had subpoenaed, in violation of MLRPC 4.1(a)(1). Although the hearing judge did not explicitly cite Ms. Trye's misrepresentation concerning the altered settlement documents, that episode also supports the conclusion that she violated MLRPC 4.1(a)(1). We thus grant the Commission's exception in that regard.

### MLRPC 4.2 – Communication with Person Represented by Counsel

MLRPC 4.2 states, in pertinent part:

> (a)   .... *[I]n representing a client*, a lawyer shall not communicate *about the subject of the representation* with a person who the lawyer knows is represented in the matter by another lawyer unless the lawyer has the consent of the other lawyer or is authorized by law or court order to do so.

(emphasis added).

MLRPC 4.2 prohibits an attorney – when acting in a representational capacity – from discussing a legal matter with a person the lawyer knows to be represented with respect to that matter, unless the attorney has the consent of counsel or other authorization. Any mode of communication involving the subject of the representation, including text messages and letters, can violate MLRPC 4.2. *Attorney Grievance Comm'n v. O'Leary*, 433 Md. 2, 69 A.3d 1121 (2013) (finding a violation of MLRPC 4.2 after an attorney repeatedly communicated through text message with her client's wife, represented by counsel at the time of the messaging, regarding a pending divorce action); *Attorney Grievance Comm'n v. Sperling*, 434 Md. 658, 76 A.3d 1172 (2013) (attorney violated MLRPC 4.2 by sending a letter regarding pending legal matter to a party who had already retained legal counsel).

Ms. Trye was well aware that Mr. Hamburg represented her estranged husband, the adverse party in her divorce case. Until August 2013, Ms. Trye represented herself in that matter. The hearing judge found that, although Ms. Trye knew Mr. Hamburg represented Mr. Trye and although Mr. Hamburg requested that she cease communications with his client concerning the litigation, she contacted Mr. Trye repeatedly regarding the divorce litigation and thereby violated MLRPC 4.2.

Ms. Trye excepts to this conclusion, arguing that Mr. Hamburg authorized her to communicate directly with his client on child custody issues and that her communications with Mr. Trye fell within that authorization, citing only her own testimony at the hearing. The hearing judge discounted Ms. Trye's testimony as not credible and we defer to the

hearing judge's assessment on that score. We deny Ms. Trye's exception on the ground that the communication was authorized by Mr. Hamburg.

We decline, however, to find a violation of MLRPC 4.2 on a somewhat different ground. The only specific incident cited by the hearing judge to illustrate how Ms. Trye had violated Mr. Hamburg's instruction not to communicate directly with his client about the divorce litigation was her meeting with Mr. Trye on the evening of October 3, 2013. At that meeting, she talked with Mr. Trye about the divorce and gave him the signed documents to take to court the next day. But, by that time, Ms. Trye had retained Mr. Butler for the case and presumably was no longer representing herself – *i.e.*, she was no longer acting in a representational capacity that is the premise of MLRPC 4.2. Thus, finding a violation of MLRPC 4.2 based on the October 3 meeting alone would suggest that an individual who is a member of the bar, even when *not* acting in a representational capacity in a case, is restricted from directly communicating with other parties who are represented by a lawyer.

Such a holding could have significant consequences beyond this case. Direct communication between parties, without the intermediation of their lawyers, is often a bad idea, regardless of whether any of the parties is a lawyer. On the other hand, direct communication between the principals – leaving the lawyers out of the room – is sometimes the path to settlement of a dispute. Under the principle implicitly embraced by the hearing judge, the latter option would never be available if one or more of the parties happened to be a member of the bar, even if not acting in that capacity in the dispute. We hesitate to say that Rule 4.2 always forbids such communication. *See HTC Corp. v. Technology Properties,*

20

*Inc.*, 715 F. Supp. 2d 968, 972 & n.1 (N.D. Cal. 2010) (holding that similar California rule did not bar corporate chairman who happened to be member of the bar from directly contacting management of adversary company in litigation about settlement as application of the rule in those circumstances "effectively would prevent persons licensed to practice law ... from serving as officers or directors in corporations and engaging in settlement conversations outside of the presence of counsel").  Moreover, the issue has not been briefed in this case and the record is not clear on whether, and to what extent, Ms. Trye continued to act as an attorney in her divorce case after Mr. Butler entered the case.  We do not further resolve the application of MLRPC 4.2 here, but decline to find a violation of that rule on this record.  At the end of the day, our disposition of this charge does not affect the disposition of this case.

***MLRPC 8.4(c) – Conduct Involving Dishonesty, Fraud, Deceit or Misrepresentation***

MLRPC 8.4(c) provides in pertinent part:

> It is professional misconduct for a lawyer to: ...
>
> (c)     engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

An attorney can violate MLRPC 8.4(c) in personal affairs unrelated to representation of a client.  *See Attorney Grievance v. Jordan*, 386 Md. 583, 594, 873 A.2d 1161 (2005) (attorney violated MLRPC 8.4(c) when she intentionally submitted false documents to her homeowner's insurance company for the purpose of obtaining monetary benefits to which she was not entitled); *Attorney Grievance Comm'n v. Sweitzer*, 395 Md. 586, 599–600, 911

A.2d 440 (2006) (attorney violated MLRPC 8.4(c) after misrepresenting ownership of a vehicle to the Motor Vehicle Administration in order to avoid paying a sales tax). In addition, making knowing false statements to a tribunal violates MLRPC 8.4(c). *Attorney Grievance Comm'n v. Barton*, 442 Md. 91, 141-42, 110 A.3d 668 (2012). Knowing misrepresentations made to third parties, especially made in order to obtain a more favorable outcome, also violate MLRPC 8.4(c). *See Attorney Grievance Comm'n v. Agbaje*, 438 Md. 695, 731–33, 93 A.3d 262 (2014) (attorney violated MLRPC 8.4(c) by inducing a business partner to enter a partnership agreement that benefitted the attorney).

The hearing judge found that, in an attempt to obtain a more favorable loan modification, Ms. Trye knowingly misrepresented to GMAC and OCWEN that the Idylwood Road property was her primary residence, was owner-occupied, was not a rental, or was vacant at the time of the application. As noted above, the hearing judge also found that Ms. Trye intentionally made false statements to the circuit court and opposing counsel during her divorce proceeding regarding her compliance with discovery requests. Ms. Trye misrepresented the basis of her knowledge regarding the military status of a former client on a court document. Finally, Ms. Trye used deceitful tactics to induce Mr. Trye to sign the settlement agreement and consent order granting her primary physical custody of their child. Her multiple misrepresentations to the court and to third parties violated MLRPC 8.4(c).

### MLRPC 8.4(d) – Conduct Prejudicial to the Administration of Justice

MLRPC 8.4 (d) provides:

> It is professional misconduct for a lawyer to: ...

(d)     engage in conduct that is prejudicial to the administration of justice;

"Conduct prejudicial to the administration of justice is that which reflects negatively on the legal profession and sets a bad example for the public at large." *Attorney Grievance Comm'n v. Thomas*, 440 Md. 523, 555-56, 103 A.3d 629 (2014) (citation and internal quotation marks omitted). An attorney engages in conduct that is prejudicial to the administration of justice when an attorney makes repeated misrepresentations to a court or others. *Mixter*, 441 Md. at 526; *Agbaje*, 438 Md. at 717 (attorney abused his position as attorney by concealing from client the true risk of a financial scheme and acted to prevent client from learning the truth, in violation MLRPC 8.4(d)). There is no need to reiterate the details of Ms. Trye's misrepresentations; they constituted a violation of MLRPC 8.4(d).

The hearing judge also concluded that Ms. Trye's failure to file tax returns for 2009, 2010, 2012, and 2013 also violated MLRPC 8.4(d) – a conclusion that merits additional discussion. Ms. Trye admits the failure to file, but asserts that it was not "willful." As noted above, the Commission did not allege a willful failure to file in its petition and the hearing judge made no finding on willfulness.[10]

---

[10] We note that there is evidence in the record that could support a finding of willfulness, at least for some of the tax years in question. "Willfulness" has been defined as "the voluntary, intentional violation of a known legal duty not requiring a deceitful or fraudulent motive." *Attorney Grievance Comm'n v. Thompson*, 376 Md. 500, 514-15 & n.6, 830 A.2d 474 (2003) (citations and internal quotation marks omitted). Ms. Trye testified at a hearing in her divorce case that she was aware of the financial and legal consequences of not filing tax returns. In this proceeding, she has attributed her failure to file to the obstacle the divorce case presented to coordinating with her former husband and the "current" dissolution of her law firm. But Ms. Trye's divorce action, which was filed in 2012, and the current dissolution of her law firm would not appear, on their face, to explain her failure to

23

A willful failure to file tax returns is a crime and a violation of MLRPC 8.4(b). *See, e.g., Attorney Grievance Comm'n v. Atkinson*, 357 Md. 646, 650, 745 A.2d 1086 (2000). It has also been held to violate MLRPC 8.4(d). *Id*. at 654-56; *see also Attorney Grievance Comm'n v. Hoang*, 433 Md. 600, 610, 72 A.3d 548 (2013); *Attorney Grievance Comm'n v. Tayback*, 378 Md. 578, 592, 837 A.2d 158 (2003) (noting that the willful failure to file tax returns erodes confidence in the legal profession). Although a finding of willfulness is necessary to support the conclusion that an attorney violated MLRPC 8.4(b), which concerns misconduct that is a criminal act, there is no requirement that an attorney violate a criminal law as a prerequisite to a determination that the attorney violated MLRPC 8.4(d).

Ms. Trye failed to file tax returns over an extended period of time. The reasons she offers for that delinquency – her divorce and the dissolution of her law firm – appear to post-date at least part of that period. She does not indicate that she took any actions to deal with those issues, as simple as seeking an extension of the due date of a tax return. The failure of a lawyer to comply with a legal obligation common to all citizens for an extended period of time is conduct that reflects negatively on the legal profession. We conclude that Ms. Trye's failure to file tax returns also supports a determination that she violated MLRPC 8.4(d).

---

file tax returns for 2009 and 2010. In any event, we need not resolve the issue of willfulness, as it does not affect our decision as to whether she violated MLRPC 8.4(d) or our disposition of the sanction in this case.

**Sanction**

The primary objective in sanctioning attorney misconduct is to protect the general public and the integrity of the bar rather than to punish the offending attorney. *Attorney Grievance Comm'n v. Kremer*, 432 Md. 325, 337, 68 A.3d 862 (2013). When deciding upon a sanction we consider the facts and circumstances of each individual case and consider any aggravating or mitigating circumstances. *Attorney Grievance Comm'n v. Zuckerman*, 386 Md. 341, 375, 872 A.2d 693 (2005).

The Commission proposed disbarment as the appropriate sanction. At oral argument, Ms. Trye's counsel proposed a reprimand or a 30-day suspension.

Ms. Trye's false statements in the circuit court, which were part of a pattern of dishonesty and intentional misrepresentation, warrant disbarment. Ms. Trye made multiple intentional misrepresentations, including misrepresenting the Idylwood Road property as her primary residence on a loan modification application, misrepresenting her compliance with discovery during a court hearing, and misrepresenting the basis for her knowledge of a client's military status. Most egregiously, Ms. Trye deceitfully attempted to alter the agreed custody terms of a settlement agreement and consent order and conceal the alteration from the opposing party for her own advantage.

Disbarment is ordinarily the appropriate sanction for intentional dishonest conduct. *Attorney Grievance Comm'n v. Pennington*, 387 Md. 565, 597, 876 A.2d 642 (2005); *Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 56, 891 A.2d 1085 (2006). This Court

has consistently disbarred attorneys who were found to have engaged in a pattern of dishonesty or misrepresentation. *See Attorney Grievance Comm'n v. Fader*, 431 Md. 395, 66 A.3d 18 (2013) (attorney disbarred after repeatedly making false statements and submitting false evidence to the court); *Attorney Grievance Comm'n v. Seltzer*, 424 Md. 94, 117-18, 34 A.3d 498 (2011) (disbarring an attorney who made false statements, submitted false documents, issued bad checks, and failed to appear at a disciplinary hearing); *Attorney Grievance Comm'n v. Guberman*, 392 Md. 131, 896 A.2d 337 (2006) (attorney disbarred after creating records to document fictitious appeal of case, including false file stamps indicating that appellate court's clerk had received notice of appeal).

Although the hearing judge did not make any specific findings related to mitigating or aggravating factors, Ms. Trye's counsel pointed to certain facts in argument at the hearing that might be considered mitigating – *i.e.*, that the violations occurred while Ms. Trye was going through a divorce and custody dispute.[11] In the exceptions filed on her behalf and at oral argument before us her counsel contended that the stress of her divorce litigation was mitigating factor – that her mental state was altered due to the custody battle and her worries about eviction from her home as a result of foreclosure on the Whispering Court property. While we sympathize with Ms. Trye's situation, it does not justify deliberate false representations to the court, or the alteration of the agreed-upon settlement documents. Nor is it mitigation that precludes disbarment for dishonest conduct. *See Attorney Grievance*

_____

[11] We also note that the Commission has advised that Ms. Trye does not have a prior disciplinary record – a mitigating factor. On the other hand, she is an experienced attorney – an aggravating factor.

*Comm'n v. Vanderlinde*, 364 Md. 376, 413-14, 773 A.2d 463 (2001) (only a debilitating mental or physical condition that is the "root cause" of misconduct and that disables the attorney from conforming conduct to the law and MLRPC can mitigate intentionally dishonest conduct).  Accordingly, disbarment is appropriate in this case.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761(B), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST SHAUNTESE CURRY TRYE.**

27

Circuit Court for Baltimore City
Case No. 24-C-14-004854
Argued: 12 May 2015

IN THE COURT OF APPEALS
OF MARYLAND

AG No. 34

SEPTEMBER TERM, 2014

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

SHAUNTESE CURRY TRYE

Barbera, C.J.,
*Harrell, J.
Battaglia,
Greene,
Adkins,
McDonald,
Watts,

JJ.

Concurring Opinion by Harrell, J., joined by
Battaglia, J.

Filed: July 27, 2015

*Harrell, J., now retired, participated in the
hearing and conference of this case while an
active member of this Court; after being
recalled pursuant to the Constitution, Article IV,
Section 3A, he also participated in the decision
and adoption of this opinion.

Although I concur with the outcome reached and virtually all of the reasoning contained in the Court's opinion, I part company with the opinion's refusal to find a violation of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 4.2 (Communication with Person Represented by Counsel) on the facts of this case. *See* Slip. Op. at 18–21. That is not to say that the undeveloped hypothetical example relied on by the Court's opinion might not be a valid reason not to find a violation of MLRPC 4.2, i.e., a blanket prohibition on represented parties from speaking directly and in good faith to each other could be an obstacle to settlement; however, that is not the present case. Rather, this case demonstrates, in the underlying family law litigation, a party who is a lawyer (Respondent) talking directly to her lay person spouse (where both parties were represented by counsel at the time in question and the spouse's counsel had told Respondent earlier, when she was representing herself, to cease speaking directly to his client) in circumstances where she was attempting to pull a "fast one" by attempting to induce her spouse and the parties' counsel to execute a settlement agreement that she altered surreptitiously. This presents an all-too-real and volatile example of where a MLRPC 4.2 violation should be sustained, with due deference to the Majority opinion's hypothecation on a higher moral plane.

I would sustain the hearing judge's conclusion that MLRPC 4.2 was violated, based on the facts found in the present case.

Judge Battaglia has authorized me to state that she joins this opinion.